## ALICE D. PICK vs. CLARK THURSTON.

### PROVIDENCE—FEBRUARY 10, 1903.

PRESENT: Stiness, C. J., Tillinghast and Rogers, JJ.

(1) *Negligence. Law of the Road.*

Plaintiff was riding a bicycle along a street twenty-three and one-half feet wide from curb to curb. There was on her right hand a large wagon going the same way as herself, and on her left hand was the defendant's carriage coming towards her. Plaintiff was behind and a little to the left of the team in front of her, and had started to pass the team when the collision with defendant's carriage occurred. Defendant's carriage was keeping to the right of the road:—

*Held*, that, as plaintiff was violating the "law of the road," she must show sufficient excuse for being on the wrong side to enable her to attribute negligence to defendant.

*Held*, further, that, unless the situation showed a probability of plaintiff's trying to pass the team when opposite defendant's carriage, defendant could not be expected to crowd against the curbstone.

*Held*, further, that the accident was attributable to plaintiff's own act.

TRESPASS ON THE CASE for negligence. Heard on petition of defendant for new trial, and petition granted.

ROGERS, J. This is a petition for a new trial by the defendant, after a verdict for the plaintiff, in an action on the case for negligence. In brief the reason assigned for a new trial is that the verdict is against the law and the evidence and the weight thereof. According to the plaintiff's own testimony she was riding a bicycle from Edgewood on her way to the railroad station in Providence, and had turned from Broad street into Fenner street, going north towards Westminster street. On Fenner street, which is twenty-three and one-half feet wide from curb to curb, there was ahead of her on the right hand, or east side of the street a large two-horse team or express wagon going the same way as herself, loaded with something long that came out beyond the wagon behind. On the other side of the street from her, viz., on her left hand, or west side of Fenner street, was the defendant's carriage going south from Westminster street towards Broad street. She admits

she was behind and a little to the left of the team in front of her intending to pass it on its left, which would bring her between the team and the carriage should she try to pass the team ahead of her when it was abreast, or practically abreast of the carriage, and she had started to so pass when the collision occurred which was the cause of this action.

The plaintiff swore in regard to the location of the express wagon just ahead of her, and the carriage approaching her, as follows, viz.: C. Q. 137 (Rec. p. 20). "You were on the left of it? Ans. Yes sir. C. Q. 138. You meant to pass it on the left? Ans. Yes, I would have to. C. Q. 139. The other team was coming, it was keeping to the right of the road? Ans. Yes sir. C. Q. 140. The carriage as it was driving was keeping to the right of the road? Ans. Yes sir." Albert B. Brown, the defendant's driver, and other witnesses also swore that the defendant's carriage was on the right hand or west side of the centre of the street when the collision occurred.

This case, in a measure, involves the same principle on which *Angell* v. *Lewis*, 20 R. I. 391, turned, except that in the latter case the plaintiff's wife was on the right side of the road and the defendant was on the wrong side, whereas, in the case at bar, the defendant was on the right side of the road and the plaintiff was on the wrong side. The two cases resembled each other in that the collision in both was caused by one's attempting to pass a vehicle in front of him or her going the same way, on its left, and in pulling out to do so colliding with a vehicle going the other way. In *Angell* v. *Lewis*, on page 393, this court, by Tillinghast, J., after reference to Gen. Laws R. I. cap. 74, § 1, which provides that every person traveling with any carriage or other vehicle, who shall meet any other person so traveling on any highway or bridge, shall seasonably drive his carriage or vehicle to the right of the centre of the traveled part of the road, so as to enable such person to pass with his carriage or vehicle without interference or interruption, used this language:—"The evidence shows that the plaintiff's wife complied with this requirement on meeting the two teams aforesaid, and that she was in the act of passing them safely when

the defendant suddenly pulled his team to the left and collided with hers. In thus taking the wrong side of the road the defendant took the risk of the consequences which might arise from his inability to get out of the way of another team approaching on the right side of the road and is responsible for injuries sustained by the latter while exercising ordinary care. In other words, one who violates the 'law of the road' by driving on the wrong side assumes the risk of such an experiment and is required to use greater care than if he had kept on the right side of the road; and if a collision takes place in such circumstances, the presumption is against the party who is on the wrong side. . . . Of course if plaintiff's wife had discovered the defendant's team in time to have avoided the collision, by stopping or otherwise, it would have been her duty to do so, notwithstanding the fact that defendant was guilty of negligence in violating the law of the road." To the same effect is *Winter* v. *Harris*, 23 R. I. 47, 54, where the court says, in the words of *Brooks* v. *Hart*, 14 N. H. 307, 311: "It is legal negligence in any one to occupy the half of the way appropriated by law to others having occasion to use it in traveling with teams and carriages, and he is chargeable for any injury flowing exclusively from that cause alone."

The plaintiff swore in answer to Q. 9 (Rec. p. 7), as follows: "I was on the right hand side of the street and came from Broad through Fenner until I saw a team going from me." Her testimony shows that as she neared the team in front of her she drew off to her left to pass it on its left and as she swore that the carriage approaching her was on its right, or the west, side of the street, with which statement the defendant's driver agrees, we have no hesitation in saying that the great preponderance of evidence shows that she was not on the side of the street prescribed by law.

(1)    As the plaintiff in the case at bar was violating the "law of the road" she must show some sufficient cause or excuse for being on the wrong side to enable her to attribute negligence to the defendant. Her contention is that the defendant must have known that she desired to pass by the express wagon ahead of her on its left and that the defendant might

have given her more room by crowding to the curb on the extreme west side of the street. She swore that the team in front of her was going slowly, that she also was going slowly, though faster than the team ahead of her, that the defendant's carriage was going slowly, and that it was two o'clock P. M. on October 20, 1900, so of course it was broad daylight. There was no exigency or necessity apparent for her to pass the team when it was opposite the carriage and the driver of the defendant's carriage swore that he had no reason to anticipate her coming out from behind the other wagon and attempting to pass until she really did so, and then he pulled up close to the curbing and stopped. (Rec. p. 40.) There is no evidence to show that Brown, the defendant's driver, was driving carelessly or recklessly, or on the wrong side of the street, and unless the situation showed a probability of her trying to get by he would not reasonably be expected to crowd against the curbstone. If she had waited a moment until the team had passed the carriage she would have had the whole width of the street in which to pass the carriage. Fenner street is twenty-three and one-half feet wide from curb to curb and while there is no direct evidence as to how wide the two-horse team or express wagon in front of the plaintiff was, yet it is in evidence that the one-horse carriage of the defendant was five feet five inches wide so it is quite within bounds to say that the two-horse team at the least took up six feet of room. As one-half of the middle of the street would be eleven and three-fourths feet, if the team had been crowded close against the curbing there would have been less than six feet between the team and the centre of the street, but while the team was on the right of the centre of the street there is no testimony how far to the right of the centre it was and there are several witnesses who swore that the street had been torn up a few feet on the east side. Be that as it may, however, it is clear that the team could and did pass the defendant's carriage safely, that the defendant's carriage going east was on the right, or west, side of the street, and that the plaintiff's bicycle in addition to the plaintiff herself was loaded with several articles that,

to say the least, did not add to ease of management when going slow and passing other vehicles under the circumstances the plaintiff was attempting to do, for she swore that besides herself she had on her wheel a Boston bag nine inches wide and twelve inches deep, just above her hand on the handle bar, between that and the bell, and she had a pasteboard box perhaps eighteen inches long containing two dress waists, on the front of the wheel. In cross-examination she swore she had a small parcel tied to the sachel, and a jacket on the outside of the box, and besides these she had an umbrella, all of these being extra parcels she was taking to Boston with her where she was going, as her trunk had been sent on.

In the opinion of the court a strong preponderance of evidence shows that the defendant's driver was guilty of no negligence and that the accident was attributable to the plaintiff's own act in attempting to ride her bicycle, loaded as it was, in a dangerous place, where she was without excuse in trying to go under the circumstances.

New trial granted, and case remitted to the Common Pleas Division for further proceedings.

*James T. Egan,* for plaintiff.
*Arnold Green,* for defendant.